UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-31183
_____

Melanie K. Starkman,

Plaintiff-Appellant,

v.

Tommy N. Evans, also known as Nick Evans, individually and in his official
capacity as Senior Pastor of Munholland United Methodist Church;
Munholland United Methodist Church,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

December 27, 1999

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

BACKGROUND

In December, 1992, Defendant Munholland United Methodist Church ("the Church")
hired Plaintiff Ms. Starkman, who served as Choirmaster and Director of Music. Ms. Starkman's
supervisor at the Church was the Reverend Tommy N. Evans. During her employment, Ms.
Starkman allegedly suffered various disabilities, including asthma, osteoarthritis in both knees,
migraine headaches, and endometriosis. According to Ms. Starkman, the defendants
unreasonably failed to allow her requests for work schedule changes to permit her recovery after
knee surgery. In addition, Ms. Starkman, having suffered chemical exposure from cleaning
materials, claims that the defendants refused to accommodate her sensitivity to chemicals.

In May, 1995, when the Church terminated Ms. Starkman's employment, she filed suit
against the Church and Rev. Evans, alleging that her discharge violated the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and a Louisiana retaliatory discharge

statute, La. R.S. § 23:1361. The defendants filed a motion for summary judgment, which the

district court denied as it related to the prescription of Ms. Starkman's state law claims. The basis

of this decision was that Ms. Starkman's filing of a claim with the Office of Worker's

Compensation ("OWCA") within the one-year period properly interrupted the prescription.

However, having concluded that Rev. Evans did not qualify as an "employer," the district court

summarily dismissed both claims against him. It also granted the motion for summary judgment

as to her retaliatory conduct and ADA claims against the Church, holding that Ms. Starkman's

position as a choir director was within the parameters of this Circuit's First Amendment

"ministerial exception" to employment discrimination claims. After filing a motion for

reconsideration, which was denied, this appeal followed.

ANALYSIS

Courts of Appeals review summary judgments *de novo*, applying the same standard as the

lower court. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). Under Federal Rule of Civil Procedure 56(c), summary judgments "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Free Exercise Clause of the First Amendment[1] bars Ms. Starkman's claims under the

Americans with Disabilities Act and Louisiana employment law. In *McClure v. Salvation Army*,

460 F.2d 553 (5th Cir. 1972), the Fifth Circuit first articulated the "ministerial exception" to

employment discrimination claims. In *McClure*, this court held that the application of the

---

[1]    The defendants have not attempted to justify the dismissal of Ms. Starkman on
nondiscriminatory or religious grounds. Thus, there has been no intrusion by the state into the
internal governance of the Church, and the district court was correct in holding that the
Establishment Clause cannot bar the plaintiff from proceeding. *See EEOC v. Mississippi College*,
626 F.2d 477, 487 (5th Cir. 1980).

provisions of Title VII to the employment relationship existing between the plaintiff and her church "would result in an encroachment by the State into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause." 460 F.2d at 560. This court found that only in rare instances where a compelling state interest in regulation of the subject within the state's constitutional power to regulate is shown can a court uphold a state action which imposes even an incidental burden on the free exercise of religion. *Id*. at 558; *see also Combs v. Central Texas Annual Conference of the United Methodist Church*, 173 F.3d 343 (5th Cir. 1999) (this court's most recent affirmation and discussion of the Free Exercise Clause's bar to an employment discrimination claim filed by a church's spiritual leader).

*McClure* involved an ordained minister suing the Salvation Army under Title VII after she was discharged by the religious organization. In this court's view, Congress did not intend, through nonspecific wording of provisions of the Civil Rights Act relating to equal employment opportunities, to regulate the employment relationship between church and minister. *McClure* 460 F.2d at 553. The facts of the present case, however, are somewhat distinct from those in *McClure*. First, instead of the plaintiff being an ordained minister as in *McClure*, here she is a choir director. Second, instead of the plaintiff bringing a Title VII claim, here she has complained on the basis of the ADA and the Louisiana retaliatory discharge statute.

And yet, the "ministerial exception" outlined in *McClure* should be extended to the case now before us because, like the ADA and the Louisiana retaliatory discharge statute at issue in the instant case, Title VII is an anti-discrimination and anti-retaliation statute.[2] Furthermore, as we discuss below, Ms. Starkman's position as a choir director required her to perform ministerial functions that warrant the First Amendment's protections against undue interference with the personnel decisions of churches and religious leaders.

If Ms. Starkman is considered a "minister" and falls under the exception, this Court may

---

[2] Defenses available to and treatment of religious institutions for purposes of the ADA are addressed under 43 U.S.C. 12113(c).

not inquire into her employment and must dismiss her suit against the Church. On the other hand, if Ms. Starkman's position as a choir director merely required her to "perform tasks which are not traditionally ecclesiastical or religious," the Church is not "entitled to *McClure*-type protection" under the Free Exercise clause. *EEOC v. Southwestern Baptist*, 651 F.2d 277, 285 (5th Cir. 1981). No Fifth Circuit case dealing with the ADA has as yet held that a choir director qualifies as a "minister" for purposes of the "ministerial exceptions" under *McClure*.

To determine whether Ms. Starkman qualifies as a "spiritual leader" for purposes of the ministerial exception, this court will examine the employment duties and requirements of the plaintiff as well as her actual role at the church. *Southwestern Baptist*, 651 F.2d at 285. The status of employees as ministers for purposes of *McClure* remains a legal conclusion for this court. *Id.* at 283. *EEOC v. Catholic University of America* makes it clear that "the ministerial exception has not been limited to members of the clergy." *EEOC v. Catholic University of America* 83 F.3d 455, 461 (D.C. Cir. 1996) (citing *Rayburn v. General Conference of Seventh-Day Adventist*, 772 F.2d 1164, 1169 (4th Cir. 1985)). The "ministerial exception encompasses all employees of a religious institution, whether ordained or not, whose primary functions serve its spiritual and pastoral mission." *Catholic University*, 83 F.3d at 463. Furthermore, the defendants are not required to advance a theological or religious explanation regarding its allegedly illegal employment actions. *See EEOC v. Catholic University of America*, 83 F.3d 455, 465 (D.C. Cir. 1996) (finding that the "focus of the ministerial exception is on the action taken, not possible motives.").

The question of who qualifies as a minister requires this court to evaluate several factors. First, this court must consider whether employment decisions regarding the position at issue are made "largely on religious criteria," *Southwestern Baptist*, 651 F.2d at 283. Yet, merely serving as "exemplars of practicing Christians" is insufficient under *EEOC v. Mississippi College*, 626 F.2d 477, 485 (5th Cir. 1980). Although Ms. Starkman argues that she was hired strictly on the basis of her qualifications as a choir director, it is clear that her job requirements went above and

beyond mere musical issues. To be certified as a Director of Music Ministry, she was not only required to have a masters in music, but also extensive course work in Church Music in Theory and Practice, Choral Conducting, Worship, Choral Vocal Methods, Hymnology, Bible, Theology, Christian Education, and United Methodist History, Doctrine and Polity. The job description for Director of Music, states that "the Director of Music is responsible for the planning, recruiting, implementing and evaluating of music and congregational participation in all aspects of this ministry at Munholland United Methodist Church." Furthermore, there is no dispute that religious music plays a highly important role in the spiritual mission of the church. Thus, it seems clear that the job specifications required Ms. Starkman to be educated in religion and serve as a spiritual leader.

Second, to constitute a minister for purposes of the "ministerial exception," the court must consider whether the plaintiff was qualified and authorized to perform the ceremonies of the Church. *Southwestern Baptist*, 651 F.2d at 284. Ms. Starkman had several religious duties and responsibilities. For example, she was required to plan worship liturgy, coordinate church and worship activities relating to the church's Music Ministry, rehearse with choirs and conduct those choirs, hire musicians and lower level music ministry directors, and write articles about the church's Music Ministry for the weekly church bulletin, introducing liturgical seasons for worship services. Ms. Starkman, in her Answers to Interrogatories, lists twenty-one duties under the category of religious or worship-oriented job duties, compared to only three entries for nonreligious, nonworship-oriented, or secular duties. She also lists nineteen of the twenty one religious tasks as "essential," while she designates all of her three nonreligious duties as "not essential."

Third, and probably most important, is whether Ms. Starkman "engaged in activities traditionally considered ecclesiastical or religious," *Southwester Baptist*, 651 F.2d at 284, including whether the plaintiff "attends to the religious needs of the faithful," *Mississippi College*, 626 F.2d at 485. While Ms. Starkman claims that attending to the "religious needs of the faithful"

was not a primary duty," she admits that she was designated to be a "ministerial presence" to ailing parishioners on occasion. She also concedes that, for her and her congregation, music constitutes a form of prayer that is an integral part of worship services and Scripture readings.

The evidence, when examined in the light most favorable to the Plaintiff, indicates that Ms. Starkman did serve as a spiritual leader and thus properly falls under the rubric of this court's ministerial exception. Admittedly, the facts of this case regarding the question of who qualifies as a minister are not as strong as those in *McClure* or *Southwestern Baptist*. However, neither is the position of the choir director in the instant case as weak as that of the faculties in *Mississippi College*, who did not serve the role of "intermediaries between a church and its congregation," or attend the "religious needs of the faithful," 626 F.2d at 485, nor is it similar to the support staff, who only served mere administrational functions in *Southwestern Baptist*, 651 F.2d at 284. It is sufficient that Ms. Starkman clearly performed tasks that were "traditionally ecclesiastical or religious." *Southwestern Baptist*, 651 F.2d at 284.

CONCLUSION

Because the evidence shows that Ms. Starkman participated in religious rituals and had numerous religious duties, she qualifies as a "minister" for purposes of the First Amendment Free Exercise Clause exception to employment discrimination claims. While religious institutions are generally bound by the ADA and other employment discrimination laws, (e.g. a church secretary or janitor may advance an ADA claim if he or she is discharged because of a disability), the facts of this case trigger the Free Exercise Clause's bar against such claims. Therefore, although the district court properly denied the defendant's motion for summary judgment as it related to the prescription of Ms. Starkman's state law claims, the district court's decision to grant summary judgment in favor of the Church and Mr. Evans was correct. Accordingly, we AFFIRM.