Yosef **RETTA,** Mulualem Fantahun, Dr. Girma Wolde Rufael, Abebe Ewnetu, Eyoel Negga, Abera Fitta, Mrs. Tewabech Tadesse, Mr. Bizuayehu Getachew, and Mrs. Solome Mekonnen, Appellants,

v.

Tekola **MEKONEN** and Tsehaye Tsidk Betemariam, Appellees.

No. 05–10–00718–CV.

Court of Appeals of Texas, Dallas.

March 3, 2011.

Bruce K. Thomas, Law Office of Bruce K. Thomas, Steven C. Metzger, Metzger & McDonald PC, Dallas, TX, for Appellants.

David R. Gibson, The Gibson Group, DeSoto, TX, Appellees.

Before Justices MURPHY, FILLMORE, and MYERS.

## OPINION

Opinion By Justice MYERS.

This is an interlocutory appeal from a temporary injunction. Appellants, Yosef Retta, Mulualem Fantahun, Dr. Girma Wolde Rufael, Abebe Ewnetu, Eyoel Negga, Abera Fitta, Mrs. Tewabech Tadesse, Mr. Bizuayehu Getachew, and Mrs. Solome Mekonnen, are members of the board of trustees of The Ethiopian Orthodox Tewahedo Debre Meheret St. Michael's Church in Dallas. Appellees are former members of the church. The trial court granted a temporary injunction enjoining appellants from prohibiting any person from entering the church and peaceably participating in worship services. The court also prohibited appellants from requiring any person to leave the worship services unless the person is creating an actual disturbance. The court also enjoined appellants from destroying any church documents or records. Appellants bring three issues asserting (1) the trial court lacked jurisdiction to grant the temporary injunction; (2) the court abused its discretion in granting the temporary injunction because appellees failed to meet their burden of proof; and (3) the temporary injunction was vague and overbroad. We conclude the trial court lacked jurisdiction to grant the temporary injunction enjoining appellants from prohibiting persons from entering the church or removing persons during worship services, and we conclude appellees failed to meet their burden of proof for an injunction prohibiting appellees from destroying church documents or records. Accordingly, we vacate the trial court's order granting the temporary injunction, we dissolve the temporary injunction, and we remand the cause to the trial court for further proceedings.

## BACKGROUND

On April 12, 2009, the church's board of trustees amended the church's bylaws to add a requirement for membership—a contribution of thirty dollars per month. Some church attendees who had lost their membership under the new contribution requirement objected to the amended bylaws, asserting the trustees did not follow the procedures specified for amending the bylaws and that the trustees who approved the amendments were not properly elected under the bylaws.

On May 1, 2010, the trustees learned that several people planned to attend worship services the following day, sit in the balcony, wait for someone to turn out the lights during the service, and throw their shoes (and perhaps other people) from the balcony onto the worshipers seated below. The next day, the trustees closed the balcony and hired four police officers to provide security during the worship service. At the end of the service, one of the trustees stood up to explain why a priest had been fired, but before he could speak, a woman in the congregation asked repeatedly why the balcony was closed. An-

other trustee summoned one of the police officers and pointed to the woman asking the question and said, "That's her." The officer grabbed the woman sitting next to the woman asking the question, led her out of the church, handcuffed her, and put her in a police car. After about twenty minutes, the officer released her.

On May 7, 2010, appellees, who are former members under the old bylaws but do not qualify for membership under the amended bylaws, filed suit against appellants for declaratory judgment, an accounting, and a temporary injunction. Appellees sought a declaration that the elections of the trustees were invalid because they were not in accordance with the "valid" bylaws of the church. Appellees also sought their attorney's fees under the Declaratory Judgment Act, TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (West 2008), an accounting of all expenditures during the tenure of all members of the board of trustees, and a temporary restraining order and temporary injunction preventing the defendants from (1) excluding any person seeking to attend worship services, (2) expending any church funds "except in the ordinary course of the church's business, which shall not be construed to include the hiring of security guards or off-duty police officers"; and (3) disposing of church documents and financial records. The trial court granted the ex parte temporary restraining order appellees requested.

On May 18, 2010, the court held a hearing on whether to grant a temporary injunction. The court heard testimony from numerous witnesses about the amendment of the bylaws and the incident on May 2. At the conclusion of the hearing, the court granted the temporary injunction now on appeal. The injunction ordered appellants (1) not to prohibit any person from entering the church "and peaceably participating in worship services or associated activities"; (2) not to forcibly remove any person from worship services without first asking the person to leave peaceably; (3) not to ask any person to leave the worship services "unless that person is causing an actual disruption of the service as viewed from the perspective of a reasonable person under the same or similar circumstances"; and (4) not to destroy or dispose of church records, documents, or audio and visual recordings.

## TEMPORARY INJUNCTION

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Id.* Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id.*

On interlocutory appeal, a reviewing court is limited to whether the trial court abused its discretion in granting the temporary injunction. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978). A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion. *Butnaru*, 84 S.W.3d at 204. The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's

action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.*

## Jurisdiction to Enjoin Church from Excluding or Removing Worshipers

■ In their first issue, appellants assert the trial court lacked jurisdiction over the underlying causes of action and lacked jurisdiction to render the temporary injunction on appeal. Section 51.014(a)(4) of the Texas Civil Practice and Remedies Code provides, "A person may appeal from an interlocutory order of a district court, county court at law, or county court that: ... (4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65...." We strictly construe statutes giving us jurisdiction over interlocutory appeals. *Dallas County v. Wadley,* 168 S.W.3d 373, 375–76 (Tex.App.-Dallas 2005, pet. denied). In this case, we have jurisdiction to review the trial court's subject-matter jurisdiction to grant the temporary injunction. However, we decline to consider whether the trial court has subject-matter jurisdiction over the underlying causes of action.[1] Such review would exceed our limited authority under section 51.014(a)(8). *See id.*

■ The First Amendment prohibits governmental action, including court action, that would burden the free exercise of religion by encroaching on a church's ability to manage its internal affairs. *Westbrook v. Penley,* 231 S.W.3d 389, 395 (Tex. 2007) (citing *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.,* 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952)). Texas courts lack jurisdiction to decide such matters. *See id.* at 394 and n. 3. "It is a core tenet of First Amendment jurisprudence that, in resolving civil claims, courts must be careful not to intrude upon internal matters of church governance...." *Id.* at 397. Courts should not "intrude into church governance in a manner that would be inherently coercive, even when the alleged discrimination is purely nondoctrinal." *Id.* at 401–02 (citing *Combs v. Cent. Tex. Annual Conference of the United Methodist Church,* 173 F.3d 343, 350 (5th Cir.1999)).

■ A church has the right to control its membership without government interference, including interference by the courts. *See Westbrook,* 231 S.W.3d at 398 (quoting *Minton v. Leavell,* 297 S.W. 615, 621–22 (Tex.Civ.App.-Galveston 1927, writ ref'd)). Likewise, a church has authority to determine who may enter its premises and who will be excluded without government interference. *See Turner v. Church of Jesus Christ of Latter–Day Saints,* 18 S.W.3d 877, 894–96 & n. 14 (Tex.App.-Dallas 2000, pet. denied).

In *Turner,* the plaintiffs brought suit against their church after Mr. Turner became ill while working as a missionary in Guatemala. *Id.* at 894. After they filed the suit, the church revoked their privilege to enter its temples (a privilege called "Temple Recommend"). *Id.* at 894 & n. 14. In their amended petition, plaintiffs alleged the church failed to timely restore their Temple Recommend privileges. *Id.* at 895–96. We concluded the trial court did not err in granting the church's motion for summary judgment because, "[r]egardless of the reason, the decision to revoke the Temple Recommend is an internal matter based on the Church's religious doctrine, and the Turners' allegations cannot be determined 'without an inquiry into and evaluation of the Mormon religion.... Such a determination by a court is prohib-

---

1. We express no opinion in this case whether appellants were properly elected as trustees or whether the trial court has jurisdiction to determine that issue.

ited under the First Amendment.'" *Id.* at 896 (quoting *Davis v. Church of Jesus Christ of Latter Day Saints,* 258 Mont. 286, 852 P.2d 640, 647 (1993), *overruled on other grounds by Gliko v. Permann,* 331 Mont. 112, 130 P.3d 155, 160 (2006)).

■ In this case, the church's bylaws provide, "No individual, as a result of any disciplinary measure taken by the Board of Trustees or its officers, may be denied the opportunity to worshiping [sic] in the Church or to receive the Sacraments of the Ethiopian Orthodox Tewahedo Church." However, the church's failure to follow its bylaws on a matter of internal governance is also a matter of internal church governance and ecclesiastical concerns, and the courts may not interfere with that decision. *See Drevlow v. Lutheran Church, Mo. Synod,* 991 F.2d 468, 471 (8th Cir. 1993); *Smith v. N. Tex. Dist. Council of Assemblies of God & House of Grace,* 02–05–00425–CV, 2006 WL 3438077, at *3 (Tex.App.-Fort Worth Nov. 30, 2006, no pet.) (mem. op.); *Dean v. Alford,* 994 S.W.2d 392, 395 (Tex.App.-Fort Worth 1999, no pet.).

Appellees assert the trial court had jurisdiction to grant the injunction under the "neutral principles of law" approach, which, they argue, permits a court to interpret church documents, such as the church's constitution and bylaws, to determine purely secular matters, such as disputes involving property, contract, or civil rights, without relying on religious precepts to resolve the conflict. *See Lacy v. Bassett,* 132 S.W.3d 119, 123 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Hawkins v. Friendship Missionary Baptist Church,* 69 S.W.3d 756, 759 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The courts in *Lacy* and *Hawkins* relied on the United States Supreme Court's opinion in *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). There the Court held "that a State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute." *Jones,* 443 U.S. at 604, 99 S.Ct. 3020. More recently, the Texas Supreme Court has implied that the neutral-principles approach does not extend beyond the property-ownership context. *See Westbrook,* 231 S.W.3d at 398–99 ("But even if we were to expand the neutral-principles approach beyond the property ownership context....").

In this case, whether appellants may exclude or remove worshipers does not involve property, contract, or civil rights. Even if the neutral-principles approach extended beyond property disputes, the matter is not purely secular. The question of who may be admitted and who may be excluded or removed from a house of worship is a religious question. *See Turner,* 18 S.W.3d at 896. Whether appellants had authority under the church's policies to exclude or remove worshipers is a question of internal church governance. Accordingly, the neutral-principles approach would not permit the trial court to grant the temporary injunction.

Because the temporary injunction in this case involved a determination of religious doctrine and church governance, the trial court lacked jurisdiction to grant the injunction. We conclude the trial court lacked subject-matter jurisdiction to grant a temporary injunction enjoining appellants from prohibiting persons from entering the church or removing persons from the church during worship services, and the court abused its discretion in granting the temporary injunction. We sustain appellant's first issue.

### Destruction of Documents

■ In their second issue, appellants contend the trial court abused its discretion in granting the temporary injunction

because appellees did not meet their burden of proof. Having determined the trial court lacked jurisdiction over part of the injunction, we address only the remaining portion of the injunction, which enjoined appellants from "hiding, secreting, destroying or otherwise disposing of any church documents or records, including without limitation financial records of the church, or any audio or video recordings whether from the church's security system or otherwise."

To obtain a temporary injunction, a plaintiff must prove a probable right to the relief sought and a probable, imminent, and irreparable injury in the interim. *Butnaru,* 84 S.W.3d at 204. In this case, there is no evidence that appellants had destroyed any documents or records or were likely to destroy any documents or records. Accordingly, appellees failed to meet their burden of proving a probable, imminent, and irreparable injury, and the trial court abused its discretion in enjoining appellants from destroying documents or records. We sustain appellants' second issue.

We need not address appellants' third issue asserting the injunction is too broad and too vague. *See* Tex.R.App. P. 47.1

## CONCLUSION

We vacate the trial court's order, dissolve the temporary injunction, and remand the cause to the trial court for further proceedings.